IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| JOHNNY GREENWOOD, JR. § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 1:20-cv-00566 LY |
| § | |
| TEACHER RETIREMENT SYSTEM OF § | |
| TEXAS, § | |
| § | |
| Defendant. § | |

## PLAINTIFF'S FIRST AMENDED ORIGINAL COMPLAINT

Plaintiff Johnny Greenwood, Jr. hereby files this First Amended Original Complaint and sues Defendant Teacher Retirement System of Texas for discrimination based on race, color, and sex, and retaliation under Title VII of the Civil Rights Act of 1964. In support, Mr. Greenwood states as follows:

## PARTIES

1. Plaintiff Johnny Greenwood, Jr. is an African-American male residing in Travis County, Texas. He was an employee of Defendant from approximately January 15, 2015 to May 31, 2018.

2. Defendant Teacher Retirement System of Texas (TRS) is a public pension plan of the State of Texas with its headquarters located at 1000 Red River Street, Austin, Texas 78701. It may be served with process through Brian Guthrie, 1000 Red River Street, 13th Floor, Austin, Texas 78701.

## JURISDICTION AND VENUE

3. This is an action for damages under Title VII of the Civil Rights Act of 1964. The Court therefore has jurisdiction over this dispute pursuant to 28 U.S.C. § 1331.

4. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b) because all events giving rise to this lawsuit occurred in the Western District of Texas in Travis County.

## FACTUAL BACKGROUND

5.      Plaintiff (African-American male) formerly worked for the Teacher Retirement System of Texas as an Employee Payroll and Benefits Coordinator. In the summer of 2017, Plaintiff was informed by his supervisor, Arlene Caballero (Hispanic female), that he would have to cancel a previously scheduled vacation due to her absence from work. Plaintiff asked to discuss the matter, but Caballero responded by excluding Plaintiff from important meetings and training, and by treating him very negatively and with hostility. Caballero also routinely treated Plaintiff less favorably than Hispanic female employees. Plaintiff complained to upper management and Defendant's Human Resources Department about the hostile environment and disparate treatment, and requested to be moved to another position out of Caballero's supervision. Upper management would not support Plaintiff's request for a transfer. The Human Resources Department advised Plaintiff that "a manager can do whatever they want," and initially failed to perform any sort of investigation. Meanwhile, Caballero continued to exclude Plaintiff from important meetings and intentionally avoided interacting with him. And, when Caballero learned of Plaintiff's complaints, she escalated her hostility towards him, including by yelling at him and belittling him in front of his co-workers.

6.      At or near the end of 2017, Plaintiff applied for an open Payroll Coordinator position. Despite being more than qualified for the position, Plaintiff was not selected. Caballero instead gave the position to a less qualified Hispanic female, Veronica Faz. Faz was a manager in a different department, had less payroll experience than Plaintiff, and took a demotion to move into the Payroll Coordinator position. Yet, Caballero lobbied to give Faz a raise in connection with the demotion. Caballero's request was denied. Upon information and belief, Caballero incentivized Faz to accept the position by offering her a raise in the future.

7.      Plaintiff continued to suffer discrimination and retaliation after being passed over for the Payroll Coordinator position. For example, Caballero and another Hispanic female employee, Janie

Duarte (Interim Accounting Director), created a very negative performance evaluation regarding Plaintiff, and, in February 2018, Plaintiff was placed on a "Performance Improvement Plan" and given 90 days to "improve."  Not only did the Performance Improvement Plan not even accurately reflect Plaintiff's job duties, this was Plaintiff's first "write-up" in almost 30 years of work within various agencies in Texas.  Moreover, the Accounting Director, Richard Scheel, told Plaintiff that he was not in agreement with the performance evaluation proposed by Caballero and Duarte, but that, in order to appease them, he was going to issue the Performance Improvement Plan anyway.  At the same time, though, Scheel told Plaintiff that he was going to destroy the bogus performance evaluation.  Plaintiff later requested a copy of the evaluation on two separate occasions, but Scheel claimed each time that it was not part of Plaintiff's employment record or work history and refused to produce it.

8. During the initial 90 days of the Performance Improvement Plan (from February to late April/early May 2018), Plaintiff received no feedback or coaching from Caballero or upper management, and was not otherwise advised of any issues with his performance.  Upon information and belief, Plaintiff was producing more work than his co-workers.  Yet, in or around late April or early May 2018, his Performance Improvement Plan was extended for another 30 days "to improve" his performance, and Caballero threatened to cancel another of Plaintiff's preapproved vacations.  Caballero also tried to turn Plaintiff's co-workers against him during this time frame by casting him as an "angry black man" and as a "threat" to the team.

9. Plaintiff was also singled out to perform less appealing work that his co-workers did not have to perform.  For example, Plaintiff was required to plan a large annual enrollment event with little to no assistance from his co-workers.  Plaintiff was also required to handle monthly new-hire orientations by himself.

10. To avoid being discharged, Plaintiff was forced to resign his employment with Defendant on May 18, 2018, and take the only available position at a different agency that he previously

worked for at a significant decrease in pay. This change in position constituted a demotion, and negatively impacted Plaintiff's career.

11. Plaintiff had no choice but to resign his employment with Defendant. The ongoing discrimination, retaliation, and hostile environment at TRS had become so intolerable that a reasonable person in the same position would have felt compelled to resign. Plaintiff's decision to resign was reasonable given the totality of the circumstances, including the facts that (i) Defendant did not select Plaintiff for a position for which he was qualified, and instead gave the position to a less qualified Hispanic female; (ii) Defendant placed Plaintiff on a Performance Improvement Plan in retaliation for complaining about disparate treatment and harassment based on his race, color, and sex; (iii) Defendant unnecessarily extended Plaintiff's Performance Improvement Plan in late April/early May 2018 in retaliation for complaining about disparate treatment and harassment based on his race, color, and sex; (iv) Defendant assigned Plaintiff less desirable job duties in retaliation for complaining about disparate treatment and harassment based on his race, color, and sex; (v) upper management failed to intervene or otherwise remedy the ongoing retaliation, harassment, and disparate treatment; and (vi) Defendant's Human Resources department failed to remedy the ongoing retaliation, harassment, and disparate treatment, and instead told Plaintiff that Caballero could do whatever she wanted.

12. Another African American co-worker was forced to take a demotion in lieu of being fired because of similar issues with Caballero.

13. Defendant discriminated against Plaintiff because of his race, color, and sex, and also retaliated against him for complaining about discrimination and his hostile working environment. The discrimination and retaliation was frequent, repeated, and continuing throughout the summer of 2017 through the end of Plaintiff's employment in May 2018. Defendant—through the repeated inaction of its Human Resources Department and upper management—made it clear to Plaintiff that he would

have to simply accept the ongoing retaliation, discrimination, and harassment in order to continue his employment with Defendant.

## **FIRST CAUSE OF ACTION: TITLE VII DISCRIMINATION**

14. Plaintiff incorporates by reference the foregoing factual allegations.

15. Defendant discriminated against Plaintiff based on his race, color, and sex, including, without limitation, by failing to hire him for the Payroll Coordinator position, placing him on a Performance Improvement Plan that was inappropriate and unneeded, unnecessarily extending the Performance Improvement Plan, and otherwise subjecting him to a hostile work environment for almost one year.

16. Plaintiff's work environment, as described above, was objectively and subjectively offensive. The harassment and intimidation Plaintiff experienced was severe and/or pervasive, and was based on his race, color, and sex, as well as his opposition to ongoing discriminatory treatment. Enduring the harassment became a condition of Plaintiff's continued employment. A reasonable person would consider Plaintiff's work environment intimidating, hostile, and/or abusive.

17. Additionally, constructive discharge in violation of Title VII occurs when the harassment or discrimination at issue is so intolerable that a reasonable person in the same position would have felt compelled to resign, and the decision to resign was reasonable given the totality of the circumstances. As detailed above, Defendant's actions in failing to hire Plaintiff for a position for which he was qualified (and instead giving the position to a less qualified Hispanic female), singling him out to perform less appealing duties that his co-workers did not want to perform, placing him on and then unnecessarily extending a baseless Performance Improvement Plan, and otherwise engaging in other harassment and hostility, resulted in Plaintiff's constructive discharge.

## **SECOND CAUSE OF ACTION: TITLE VII RETALIATION**

18. Plaintiff incorporates by reference the foregoing factual allegations.

19. Plaintiff engaged in a protected activity on multiple occasions by complaining about and otherwise opposing illegal discrimination/disparate treatment based on his race, color, and sex. After engaging in protected activity, Plaintiff suffered adverse employment actions in the forms of being placed on an unneeded and retaliatory Performance Improvement Plan, having the Performance Improvement Plan unjustifiably extended, being given less desirable work duties, and then ultimately being constructively discharged and forced to take a demotion. These actions would dissuade a reasonable person from engaging in protected activity. There is a causal connection between Plaintiff's protected activity and these adverse actions. The adverse actions occurred in close proximity to the protected activity.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

20. Plaintiff timely filed his Charge of Discrimination with the EEOC on February 6, 2019. (Exhibit 1). The EEOC prepared a letter dated February 19, 2020, asserting that it had decided to dismiss the Charge. The EEOC's Dismissal and Notice of Rights is dated Thursday, February 20, 2020. (Exhibit 2). However, the Dismissal and Notice of Rights was not mailed to counsel of record for Plaintiff until Monday, February 24, 2020, as clearly evidenced by the post mark on the envelope. (Exhibit 3). Plaintiff's counsel received the Dismissal and Notice of Rights on February 27, 2020. Plaintiff filed this lawsuit on May 27, 2020 (*see* Docket No. 1), within 90 days of receipt of the Dismissal and Notice of Rights.

## DAMAGES

21. Due to the Defendant's discriminatory and retaliatory conduct, Plaintiff has suffered damages for loss of income, retirement benefits, and other losses. Further, Plaintiff has had to incur attorney's fees in the prosecution of this matter. Plaintiff seeks all damages and relief available under Title VII, including compensatory damages.

## CONCLUSION

For these reasons, Plaintiff prays that the Court grant judgment in his favor against the Teacher Retirement System of Texas for actual damages, compensatory damages, attorneys' fees, and costs, and that he be awarded all such other and further relief to which it may be entitled, at law or in equity.

Respectfully submitted,

**THOMPSON & HORTON LLP**

By: /s/ James E. Byrom
James E. Byrom
State Bar No. 03568100
jbyrom@thompsonhorton.com

3200 Southwest Freeway, Suite 2000
Houston, Texas 77027
Telephone: (713) 554-6767
Facsimile: (713) 583-8884

ATTORNEYS FOR DEFENDANT

## CERTIFICATE OF SERVICE

I hereby certify that, on October 8, 2020, a true and correct copy of the foregoing document was filed and served via the Court's CM/ECF system, as follows:

Yvonne Bennett
Assistant Attorney General
Office of the Attorney General
P.O. Box 12548
Austin, Texas 78711
*yvonne.bennett.@oag.texas.gov*

/s/ James E. Byrom
James E. Byrom

4832-9921-8635, v. 2